IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL CHARLES FEGELY, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAVID C. COLLINS, SR. | : | NO. 23-2258 |

**MEMORANDUM**

**Padova, J.**                                                                                                **April 11, 2024**

      Pro se Plaintiff Daniel Charles Fegely, Jr., a pretrial detainee at the Northampton County Prison ("NCP"), commenced this 42 U.S.C. § 1983 action against Defendant David C. Collins, Sr., the Public Safety Administrator at NCP, asserting that Defendant restricted Plaintiff's telephone access to his criminal lawyer, in violation of Plaintiff's Sixth Amendment right to counsel. Defendant has filed a Motion for Summary Judgment, to which Plaintiff has filed no response. For the following reasons, we grant Defendant's Motion and enter judgment in Defendant's favor.

**I.    BACKGROUND**

      The summary judgment record contains the following undisputed facts. Public dockets reflect that, on November 14, 2022, Fegely was charged in Northampton County with "Criminal Attempt – Criminal Homicide" and other offenses based on events that occurred on November 12, 2022. Docket, Commonwealth v. Fegely, No. CP-48-CR-0000281-2023 (C.P. Northampton) ("281 Docket"), at 1, 3. Bail was denied that same day. Id. at 2. On March 29, 2023, Plaintiff was charged in a second criminal proceeding in Northampton County with "Criminal Solicitation – Criminal Homicide" and "Conspiracy – Intimidate Witness/Victim – Withhold Testimony" based on events that occurred on November 14, 2022. (Docket, Commonwealth v. Fegely, No. CP-48-

CR-0001291-2023 (C.P. Northampton) ("1291 Docket"), Def.'s Ex. W, at 1-2.[1])  At all times relevant to this civil action, Plaintiff was incarcerated as a pretrial detainee at NCP and was represented in his criminal matters by attorney Brian Monahan, Esq.  See 281 Docket at 7 (showing that Monahan entered his appearance on Plaintiff's behalf on December 12, 2022); (1291 Docket at 4; Pl.'s Dep. Tr., Def.'s Ex. U, at 10-11.)  Also at all relevant times, Defendant David C. Collins Sr. was the Public Safety Administrator at NCP.  (Def.'s Concise Stmt. of Material Facts, Docket No. 22, ¶ 1.)

NCP's Official Inmate Handbook contains a provision regarding telephone use, which explains that, upon arrival at NCP, each inmate is issued a telephone identification number ("T.I.D. number") for the inmate phone system.  (Northampton Cnty. Dept. of Corr. Official Inmate Handbook ("Handbook"), Def.'s Ex. T, at 6, 23.)  Phones are available in each housing unit.  (Id.)  Phone access is also available through GTL tablets that are loaned to inmates, and, like the phones in the housing units, the tablets require inmates to use their T.I.D. numbers to make regular or video calls.  (Id. at 49.)

According to the Handbook, inmates should treat their T.I.D. numbers as "highly confidential" and should not share them with anyone.  (Id. at 23-24.)  The Handbook further states: "Each inmate will be held responsible for any illegal or improper conduct that is associated with a particular T.I.D. number.  Misconducts may be issued to those who abuse the T.I.D. system or provide their T.I.D. numbers to others."  (Id. at 24.)  The Handbook also provides that phones "may be used for lawful purposes only" and "are subject to monitoring and recording."  (Id. at 23.)  In addition, NCP an "Automated Inmate Telephone System" Policy, which explains that

---

[1] All of Defendant's exhibits that we reference are those attached to Defendant's Motion for Summary Judgment.

2

"[i]nmate telephone calls are a privilege which can be curtailed or rescinded for administrative or disciplinary reasons by the Department of Corrections." (Automated Inmate Telephone Policy, Def.'s Ex. V, at 1-2.) The Handbook similarly states that "[t]ablet use is a privilege, not a right and can be suspended at the discretion of DOC staff." (Handbook at 49.)

The Handbook provides that inmates in disciplinary segregation "are not permitted access to the inmate telephone system," and that, when in disciplinary segregation, an inmate's communication with legal counsel "must be done through the inmate mail system." (Handbook at 35; see also Pl.'s Dep. Tr. at 190 (stating that Plaintiff had read that portion of the Handbook).) Consistent with these policies, on both April 25 and 26, 2023, when Plaintiff was in disciplinary segregation and made written requests to call his lawyer and access the law library, he was told that he was able to contact his attorney in writing but that he was not permitted tablet privileges. (Def.'s Exs. Q-R.)

During his incarceration at NCP on the above-referenced charges, Plaintiff was written up numerous times in Incident Reports and Formal Misconduct Reports for unauthorized use of a tablet and for stealing and using other inmates' T.I.D. numbers to make phone calls. The first Incident Report on the record from this is a December 8, 2022 Incident Report, which states that Plaintiff used another inmate's T.I.D. number to use the tablet phone system. (Def.'s Ex. D.) As a result of this infraction, Plaintiff was placed in disciplinary segregation.[2] (Id.) Two and a half months later, a February 25, 2023 Incident Report described another incident in which Plaintiff,

---

[2] This was not Plaintiff's first such infraction at NCP. On July 29, 2021, when he was apparently incarcerated on different charges, an Incident Report documents that a number of inmates, including Plaintiff, had stolen another inmate's telephone PIN number to make phone calls. (July 29, 2021 Incident Report, Def.'s Ex. C.)

while in disciplinary segregation, obtained a tablet and used it to make a phone call. (Def.'s Ex. E.)

In late March of 2023, the Northampton County District Attorney called NCP and requested that Plaintiff "have all DOC communication devices and capabilities suspended" because Plaintiff had been using devices for "alleged criminal means." (March 29, 2023 Incident Report, Def.'s Ex. F.) Not long thereafter, on April 3, 2023, a detective from the Bethlehem City Police Department emailed NCP and reported that Plaintiff had utilized another inmate's tablet account information between March 28, 2023 and April 1, 2023. (April 10, 2023 Incident Report, Def.'s Ex. H.) That same day, a Formal Misconduct Report documented that Plaintiff had "used another inmate's tablet while being on a tablet restriction." (April 3, 2023 Formal Misconduct Report, Def.'s Ex. G.) Plaintiff signed that Misconduct Report, agreeing with its contents. (Id.) An April 20, 2023 Incident Report similarly documents that Plaintiff, on multiple dates, used other inmates' T.I.D. numbers "to bypass the restrictions set on him regarding not being permitted to use a tablet." (Def.'s Ex. I.)

On April 26, 2023, a Bethlehem City police detective contacted the prison and reported that he had uncovered text messages between an inmate and a woman outside the prison ("Keta F."), in which the two discussed hurting another inmate (the "Target"). (April 27, 2023 Incident Report, Def's Ex. P, at 1.) According to the related Incident Report, which Defendant authored, Plaintiff had previously organized an attempted "hit" on the Target before the Target was incarcerated. (Id.) The Bethlehem City detective understood the two individuals communicating by text to be working on Plaintiff's behalf, and believed that the inmate on the texts was conveying information he received from Keta F. to Plaintiff. (Id.) Defendant wrote in the Incident Report that he "sent an email to the Administrative personnel members, in order to advise all, of the most

4

recent alleged attempts of [Plaintiff] to attempt to commit Criminal Homicide, a charge of which, [Plaintiff] has recently been charged." (Id.) A month later, a May 30, 2023 Incident Report detailed that NCP had received a report that Plaintiff had engaged in a video visit with Keta F., with whom his visiting privileges had been suspended due to evidence that the two had previously discussed arranging a "hit" upon a civilian. (Def.'s Ex. J.)

Following these reports, Plaintiff continued to be written up for using other inmates' T.I.D. numbers to make phone calls. A June 5, 2023 Incident Report documented that, on May 31, 2023, another inmate had provided his T.I.D. number to Plaintiff so that Plaintiff could contact people outside the prison when his phone privileges were suspended for his previous misuse of tablets. (Def.'s Ex. L.) On June 8, 2023, Plaintiff signed a Formal Misconduct Report, agreeing that he had used another inmate's T.I.D. number to make a call on May 31, 2023. (May 31, 2023 Formal Misconduct Report, Def.'s Ex. K.) Plaintiff stated at his deposition that he had called his children that day. (Pl.'s Dep. Tr. at 28.)

Fegely filed his Complaint in this action on June 9, 2023, and his violations of NCP's telephone policies continued thereafter. A June 30, 2023 Incident Report documented that Plaintiff had yet again stolen another inmate's T.I.D. number to call someone sixteen times when his telephone privileges were suspended. (Def.'s Ex. B.) Plaintiff stated at his deposition that, around that time, he was calling family members, in part because he was trying to get help in finding new criminal counsel. (Pl.'s Dep. Tr. at 30-32.)

Also on June 30, 2023, Fegely wrote a letter to Defendant, in which he admitted that he had violated NCP's rules by contacting Keta F., who was not only his fiancé, but also the mother of his children, his co-Defendant in his criminal case, and, at the time, a fugitive. (Pl.'s June 30, 2023 letter, Def.'s Ex. A.) He admitted that he "was wrong for contacting her," but argued that

5

his telephone restrictions should be lifted because Keta F. was now in custody, and he could no longer call her. (Id.) He implored Defendant to restore his phone privileges so that he could call his children and his ill mother. (Id.) He did not mention calls to his lawyer in that letter. (See id.)

On July 3, 3023, a Formal Misconduct Report was issued concerning Plaintiff's having a tablet when he was not allowed one, and Plaintiff signed the report, agreeing that he had possessed a tablet. (Def.'s Ex. N; see also Pl.'s Dep. Tr. at 37 (admitting that he had a tablet for 30 minutes and that he should have returned the tablet knowing that his privileges were restricted).) An Incident Report that same day described an incident in which Plaintiff made three phone calls using a tablet while in disciplinary segregation by stealing another inmate's T.I.D. number. (July 3, 2023 Incident Report, Def.'s Ex. O.) And, finally, on July 11, 2023, Plaintiff signed a Formal Misconduct Report, acknowledging that he had again stolen another inmate's T.I.D. number to make phone calls on a tablet. (June 30, 2023 Formal Misconduct Report, Def.'s Ex. M.)

Plaintiff's Complaint in this action, which asserts a Sixth Amendment claim,[3] alleges that, on March 27, 2023, "all [of his] communication with the outside world [were] terminated by [Defendant] including contact with [his] attorney . . . ." (Compl. at 5 ¶ D.) It further alleges that Plaintiff "asked . . . [Defendant] for a legal call & it was denied every time!" (Id.) And, finally, it alleges that Plaintiff filed grievances and was denied the ability to make a legal call as a result of Defendant's "orders," even after a legal call was authorized by the Warden. (Id. at 5, 7-8.)

Plaintiff was deposed on January 9, 2024, after which Defendant filed the now-pending Motion for Summary Judgment. Plaintiff has not filed any response to the Motion.

---

[3] The Complaint initially asserted additional claims against additional defendants, but those claims and defendants were dismissed in an order dated July 5, 2023. Plaintiff was afforded leave to amend the dismissed claims, but he did not do so.

6

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In ruling on a summary judgment motion, we consider "the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)). However,

"[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

## III. DISCUSSION

Plaintiff asserts a single constitutional claim against Defendant pursuant to § 1983 and the Sixth Amendment. Plaintiff specifically alleges in his Complaint that Defendant interfered with his right to the assistance of counsel by restricting him from communicating with anyone outside the prison, which, in turn, prevented him from calling his attorney. Defendant argues that summary judgment should be entered in his favor on this claim because Plaintiff has not established the elements necessary to prevail on a Sixth Amendment claim pursuant to § 1983.

As a general matter, to establish a defendant's liability under § 1983, a plaintiff must prove "the violation of a right secured by the Constitution and laws of the United States, and . . . show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). The plaintiff must also demonstrate that the defendant was personally involved in the alleged constitutional violation by showing how the defendant was involved in the events and occurrences giving rise to the claims. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).

Under the Sixth Amendment, a pretrial detainee has a constitutional right to utilize counsel to defend against a criminal case that the state has brought against him. Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir. 2001). "The Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" Id. at 184 (third alteration in original) (quoting Procunier v. Martinez, 416 U.S. 396, 419 (1974)).

8

A prison regulation infringes on an inmate's right to counsel when it "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense." Id. at 187 (quoting Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir. 1978)).  However, to determine whether such a restriction "unjustifiably obstruct[s]" a detainee's access to counsel, the restriction "'must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'"  Id. at 187 (first quoting Procunier, 416 U.S. at 419, then quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); see also Justice v. Zimmerman, Civ. A. No. 89-1112, 1990 WL 20196, at *5 (E.D. Pa. Feb. 28, 1990) (stating that a detainee's Sixth Amendment right "is qualified by prison administrators' discretion in imposing reasonable restrictions based on security considerations." (citation omitted)).  Indeed, "certain restrictions on a detainee's right to counsel may be justified by the constraints of institutional management."  Benjamin, 264 F.3d at 185.  Accordingly, where a restriction on access is justified by administrative concerns for "safeguarding institutional security," it does not give rise to a cognizable Sixth Amendment claim.  Id. at 187 (quoting Bell, 441 U.S. at 547).

In his Motion for Summary Judgment, Defendant argues, inter alia, that Plaintiff has not and cannot establish a Sixth Amendment violation because he cannot establish that the restrictions on his telephone privileges (1) unreasonably burdened his access to counsel, and (2) were not necessary to safeguard institutional security.[4]  Indeed, Plaintiff testified at his deposition that he was always able to write to his criminal counsel and that he, in fact, sent counsel letters "all the

---

[4] Defendant also argues that the summary judgment record contains no evidence to establish that he was personally involved in the alleged Sixth Amendment violations.  We do not reach this argument as we grant Defendant's Motion on other bases.

time."[5] (Pl.'s Dep. Tr. at 24, 44.) In addition, he testified that NCP placed no limits on his attorney visiting him. (Id. at 25.) Thus, while Plaintiff maintains that he was unable to contact his attorney by phone, and the record appears to support that contention, we can only conclude that he has not established that he was denied "a reasonable opportunity to seek and receive the assistance of attorneys." Benjamin, 264 F.3d at 184 (quotation omitted). Rather, the record only supports the conclusion he was denied one potential avenue of access to his attorney (phone), and that the other avenues of access (in-person and mail) remained fully available to him. See Lawson v. Hudson Cnty. Bd. of Freeholders, Civ. A. No. 22-4340, 2023 WL 6971540, at *17 (D.N.J. Oct. 23, 2023) ("There is no constitutional right for a pretrial detainee to enjoy the most . . . convenient mode of communication." (quoting Lowery v. Westchester Cnty. Dep't of Corr., Civ. A. No. 15-4577, 2017 WL 564674, at *4 (S.D.N.Y. Feb. 10, 2017)) (citation omitted)). Consequently, we conclude that the undisputed record evidence establishes that Plaintiff had ample "opportunity to consult with his attorney and to prepare his defense" and that his access to counsel was not "'unreasonably burdened" by the telephone restrictions. Benjamin, 264 F.3d at 187 (quotation omitted); see also Perez v. Fed. Bureau of Prisons, 229 F. App'x 55, 57 (3d Cir. 2007) (stating that prisoners "ha[ve] no right to unlimited telephone use" (alteration in original) (quoting Washington v. Reno, 35 F.3d 1093, 1099-100 (6th Cir.1994)) (citations omitted)); Randall v. Cnty. of Berks, Civ. A. No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) ("[A] pretrial detainee does not have unfettered telephone access, even to communicate with legal counsel" (citation omitted)). Under these circumstances, no reasonable factfinder could conclude based on the record before us that Plaintiff's Sixth Amendment rights were violated by the telephone restrictions.

---

[5] Although Plaintiff also testified that his lawyer did not answer his letters (Pl.'s Dep. Tr. at 24), he does not contend, much less submit any evidence, that Defendant was in any way responsible for his lawyer's failure to respond.

10

Furthermore, even assuming *arguendo* that the summary judgment record supported a conclusion that Plaintiff's access to counsel was unreasonably limited by NCP's telephone restrictions, we would also conclude that the undisputed record evidence demonstrates that the restrictions were necessary for institutional safety. As detailed above, Plaintiff was awaiting trial on charges of "Criminal Attempt – Criminal Homicide," "Criminal Solicitation – Criminal Homicide," and "Conspiracy – Intimidate Witness/Victim – Withhold Testimony." 281 Docket; (1291 Docket.) His co-defendant was his fiancé, Keta F. (Def.'s Ex. A; Pl.'s Dep. Tr. at 40.) According to documents in the summary judgment record, Plaintiff and Keta F. were charged with attempting a "hit" on the Target. (Def.'s Ex. J.) Plaintiff was arrested in connection with those charges and incarcerated at NCP, while Keta F. remained a fugitive. (Def.'s Ex. A.)

Later, when the Target was himself arrested and incarcerated at NCP with Plaintiff, prison administrators believed that Plaintiff and Keta F. were continuing their efforts to inflict harm on the Target by communicating through an intermediary in prison. (See Def.'s Exs. P & J.) While Plaintiff disputes that he was attempting harm any individual at NCP, he acknowledged at his deposition that the District Attorney believed that he was trying to get another inmate killed. (Pl.'s Dep. Tr. at 38-39; see also Def.'s Ex. F.) He also admitted that in another jail, he had "sent messages . . . to have somebody beat up" in another jail. (Pl.'s Dep. Tr. at 38.) Specifically, he testified that, sometime between January and March of 2023, he sent a message to Lehigh County Jail to get an inmate there beaten up. (Id. at 41.) Moreover, Plaintiff admits to having used another inmate's T.I.D. number to have an unauthorized video visit with Keta F., when he was not permitted to do so. (Id. at 40, 45-46; see also Def.'s Ex. A.)

Under all of these circumstances, and given Plaintiff's repeated violations of NCP's policies regarding the use of telephones and tablets to make phone calls, the only reasonable

11

conclusion supported by the summary judgment record is that the phone restrictions placed on Plaintiff were necessary for institutional safety. See Stamper v. Campbell Cnty., Ky., 415 F. App'x 678, 680 (6th Cir. 2011) (finding no violation of pretrial detainee's Sixth Amendment rights when telephone suspension was necessary to "maintain[] institutional security and preserv[e] internal order and discipline" (quoting Bell, 441 U.S. at 546)); see also Perez, 229 F. App'x at 57 (stating that an inmate's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution" (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986))). We therefore conclude that Plaintiff has failed to establish a Sixth Amendment violation not only because he has not established that his access to counsel was unreasonably limited, but also because he has failed to rebut the record evidence that supports the reasonable conclusion that the restrictions were necessary for institutional security.

### IV. CONCLUSION

For the foregoing reasons, we grant Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor on Plaintiff's Sixth Amendment claim, the only claim remaining in this action. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.